Melissa D. Wischerath
OSB # 130194
Law Office of M.D. Wischerath
P.O. Box 12263
Eugene, OR 97440
(646) 765-0035 | (541) 516-1740
melissa@mdwlaw.net


        Attorney for Plaintiffs


### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| WILLIAMS, SARAH GRACE, BRUNNER-WILLIAMS, THOMAS ERIC, and WILLIAMS, MARY BETH, **Plaintiffs,** v. EUGENE 4J SCHOOL DISTRICT, and LANE EDUCATION SERVICE DISTRICT, **Defendants.** | Case No.: 6:16-cv-890 **COMPLAINT** 42 U.S.C. §§ 12132; 29 U.S.C. §§ 701; ORS § 659.850 **JURY TRIAL REQUESTED** |


## I.    INTRODUCTION

1.      This complaint is brought by Plaintiffs Thomas "Eric" Brunner-Williams

and Mary Beth Williams ("Parents"), and on behalf of themselves and their child, Sarah

Grace Williams ("Grace"), alleging civil rights violations of the Americans with

Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973 (Section 504),

their implementing regulations, and applicable state law.

## II.    JURISDICTION AND VENUE

2.       This Court has federal questions jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) because this civil action arises under the Constitution and laws of the United States.

3.       This Court has supplemental jurisdiction under 28 U.S.C. § 1367 and FRCP 18 with regard to state law claims.

4.       The Plaintiffs have standing to be before this court. The injuries described below are concrete and particularized actual and imminent injuries-in-fact. The injuries-in-fact were caused by the defendant's actions or refusals to act in a manner required by state and federal law. This relief requested is within this court's power to provide.

5.       Plaintiffs have exhausted their administrative remedies to the extent required under the IDEA and Rehabilitation Act.

6.       For this Court to consider this complaint, the violations of law at issue must not have been resolved. Grace continues to be a student with disabilities enrolled in District's schools, with significant compensatory education services and credit recovery remedies still available. Further, the District has continued its pattern of non-service and denial of accommodations, even after two due process hearings and two ODE complaints have all been resolved substantially in favor of the student.

7.       The actions giving rise to this complaint took place in the City of Eugene, Lane County, Oregon. At all times during events detailed below, plaintiffs were residents of Eugene Oregon and Grace was a school-aged student living within the Eugene 4J School District's attendance boundaries. All parties reside within this District Court's

geographic territory. Thus, venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(b).

## I.  PARTIES

8.      Sarah Grace Williams ("Grace") is a nineteen year-old student in the Eugene 4J School District.

9.      Mary Beth Williams ("Mother") and Thomas Eric Brunner-Williams ("Father") are Grace's mother and father (together "Parents".) They join this suit as parties aggrieved by the District's actions regarding Grace, Grace's educational programming, and its treatment of the Williams family.

10.     Eugene 4J School District is the local educational agency under 20 U.S.C. § 1400 *et. seq.*, serving students who live in and around Eugene, Oregon.

11.     Defendant Eugene 4J School District is responsible under state and federal law for the acts and omissions of its employees and officials, including the events described below.

12.      The District's responsibilities include identifying students with special needs who live within their attendance boundaries, and providing educational and related services to children in the District who are disabled and require special education, supplemental supports, or accommodations in order to access the District's services and programs.

13.     Oregon receives federal funds for its special education programs and distributes federal funds to the local education agencies.

14.     Lane Education Service District is one of Oregon's Education Service District.  Lane ESD provides services to school districts in Lane County.

## II.  STATEMENT OF FACTS

15.    Grace was born on September 13, 1996, in Beverly, Massachusetts. She spent most of her early years in Portland, Maine, and moved to Ithaca, New York in 2009.

16.    In 2010, at age thirteen, three men on school grounds physically and sexually assaulted Grace. After the assault, Grace suffered from post-traumatic stress syndrome and depression.  In March 2012, Grace was hospitalized in March 2012 after a second suicide attempt. While hospitalized, Grace was diagnosed with autism.

### 2012-2013 School Year

17.    In August 2012, Grace and her family moved to Eugene, Oregon.  The family's home is located in the South Eugene High School ("SEHS") service area.

18.    Prior to the move, Grace's mother, Mary Beth Williams, telephoned the administrative offices at SEHS to discuss Grace's anticipated enrollment at SEHS.  Mary Beth spoke with SEHS Assistant Principal Stephanie Cannon, and shared information regarding Grace, including her autism diagnosis and history of depression and suicidal tendencies.

19.    On August 31, 2012, Grace was enrolled as a tenth grade student at SEHS by her father, Thomas "Eric" Brunner-Williams.  On Grace's enrollment, Eric wrote that Grace had been preliminarily identified in New York as eligible for special education services, and that an IEP need to be developed "ASAP". On September 6, 2012, the SEHS Registrar, Elsa Andrew, passed the information regarding Grace's potential need for special education services to Wendy Pascoe, an employee in the SEHS guidance-

counseling department. SEHS requested Grace's records from her previous school in New York, but did not initiate an evaluation for special education

20.     Prior to the start of school, Grace and Mary Beth met with Grace's appointed guidance counselor to discuss scheduling her classes. Both Grace and Mary Beth discussed at length Grace's challenges in her previous schools, and informed the guidance counselor of Grace's suicide attempt, hospitalization, and autism diagnosis. Also discussed were Grace's high intelligence, writing skills and interest in a career in science. The counselor assured Grace and Mary Beth that she would be placed in classes appropriate for her needs, with necessary supports in place for her to thrive in her new environment.

21.     Beginning in October 2012, Grace's PTSD and autism began to affect her ability to attend classes.  Initially, she would miss class to visit the nurse or hide in the restroom.  The nursing staff referred Grace to a pediatric nurse therapist, with whom Grace met over the course of the school year.  Grace disclosed to the therapist her previous suicide attempts, and described in detail her future plans to commit suicide.

22.     Grace began to call her parents to fetch her or refuse to come to school altogether, citing illness or anxiety.  The administration at SEHS noticed the increase in absences and in late October 2012, Vice Principal Cannon contacted Mary Beth by phone, who reminded Ms. Cannon of their conversation over the summer, and Grace's mental health and autism disability.  Ms. Cannon stated that she would reach out to Grace and Grace could come to her for assistance. Ms. Cannon followed up with Grace's father in email with the same information. Ms. Cannon thereafter did not reach out to Grace and did not even meet her until December 2013.

23.    In November 2012, Grace's counselor, Laurene Larson, contacted SEHS mental health counselors, copying SEHS administration, regarding her concerns over Grace's mental health, absences, and "unpredictable and odd" behavior. There was no response or follow-up from counseling or administrators. The SEHS Student Services Team ("SST") met on November 18, 2012, and while Grace was listed on the agenda, the team ordered no evaluations.

24.    By the end of the first semester in January 2013, Grace had attempted six classes, but had dropped or failed all except history and Japanese. She was absent from her classes more than 50% of the time.

25.    In February 2013, another SST meeting was held, and again, no evaluation resulted.

26.    Parents scheduled a meeting with Vice Principal Cannon in March 2013 to specifically request a Section 504 plan, but were informed that Grace was not eligible for Section 504 accommodations and left the meeting thereafter. No evaluations were ever done, and no written notice of the reason for the denial of services was provided to the parents. A Section 504 plan was never developed for Grace at any time during the 2012-2013 and 2013-2014 school years.

27.    After the parents scheduled the Section 504 meeting with Vice Principal Cannon, truancy proceedings were initiated by SEHS administrators against Grace and her parents. A truancy officer called on the family without notice a week prior to the scheduled meeting, demanding Grace return to school the next day. SEHS staff also contacted Child Protective Services, but no action was taken by the agency.

28.    On May 5, 2013, Parents again requested evaluation, by both phone and email, and were provided only with the reply that she was not eligible for an IEP, but the SST would meet to determine whether she should be evaluated. Although District teachers and administrators agreed that the parents' request for evaluation should be addressed at the next SST meeting, the request was not discussed, and no written notice explaining the District's refusal to take action was provided to the parents.

29.    Throughout the school year, Grace's parents were in contact with her teachers, frequently attempting to obtain schoolwork and notes from her classes in order to keep her current.  Twice during the school year, Grace was dropped from school enrollment due to absences.

30.    In the second semester, which ended in June 2013, Grace again attempted six classes. She obtained credit in only one, US History.  In the second semester, she was absent for more than 60% of her classes.

**2013-2014 School Year**

31.    At the outset of the 2013-2014 school year, Grace was enrolled by her parents in the International High School program at SEHS.  Her parents believed that the smaller classes would benefit Grace.

32.    Within weeks, Grace began to again miss classes and avoid her teachers and peers.

33.    In October 2013, Grace submitted an essay in her Honor's English class describing her rape three years prior.  The essay was forwarded to her guidance counselor and placed in her permanent education file. The guidance counselor met with Grace, who

was again engaging in suicidal ideation.  The guidance counselor provided outside mental health contacts, but did not refer Grace to the SST for evaluation.

34.    On November 4, 2013, Grace's parents again emailed the district director for special education, Cheryl Linder, seeking an update on their May 2013 request for evaluation of Grace for special education services.  While the email caused an internal discussion among district staff, the parents received no reply from Dr. Linder.

35.    On December 5, 2015, Grace's parents filed a complaint with the Oregon Department of Education, alleging the District failed in its Child Find duties and ignored parents' requests for evaluation eligibility for special education instruction and services for Grace. The SEHS SST team thereafter held meetings on December 16, 2013, and January 13 and 27, 2014, where Grace was listed on the agenda, but no action was taken. On December 22, 2013, Dr. Linder, in her response to the ODE, asserted District staff was preparing to begin evaluations.  No evaluations were begun until March 2014, after being ordered by ODE.

36.    On February 10, 2014, ODE issued a Final Order in response to the parent complaint.  ODE found that the District had violated both its Child Find duty and its duty to evaluate a student upon parent request.  The parents' allegations regarding denial of a free, appropriate public education ("FAPE") to Grace could not be substantiated, because the District's refusal to evaluate foreclosed a determination of eligibility for special education services.  The department offered that if Grace was determined eligible after evaluation, the parents could seek a determination of denial of FAPE through the complaint or administrative hearing process.

37.     The February 10, 2014 ODE order required that the District complete an evaluation of Grace by April 4, 2014.  District staff first contacted the parents regarding initiating evaluations on March 7, 2014.  The first meeting of the evaluation team occurred on March 12, 2014.

38.     On March 7, 2014, SEHS Principal Randy Bernstein, copying SEHS administrators and District staff, emailed Cheryl Linder requesting a meeting to discuss how to "serve" Grace. Mr. Bernstein acknowledged the ODE order.  Dr. Linder replied that after having conferred with the District's lawyer, that they needed to "proceed with truancy" for Grace. There was no discussion of waiting until after the evaluations were complete and no meeting was planned per Mr. Bernstein's request.

39.     On April 1, 2014, the District held an attendance meeting at SEHS.  Grace did not attend, as she was scheduled for evaluations during that time. The District had been informed of the conflict, but did not reschedule the attendance conference.  After Grace did not appear at the meeting, the District sent the contracted truancy officer to the parents' home to cite the parents.  The statute allows for a fine up to $500 per occurrence. The District did not request the charges be dismissed until after the Lane County District Attorney's Office declined to prosecute Grace's parents.

40.     The evaluation of Grace was completed on April 18, 2014.  Grace was determined to be eligible for specially designed instruction under the IDEA in the categories of autism and emotional disturbance. An IEP team was convened on May 5, 2014 and the IEP and placement determination were completed on May 18th, 2014.  The team determined that Grace required 285 hours per year of specially designed instruction by a special education teacher in a self-contained classroom.  While the IEP team hoped

Grace would be able to move to a general education classroom, they initially placed her in a private, therapeutic special education school in June 2014.

41.    From June 23, 2014 until August 15, 2014, Grace attended the Center Point School in Eugene. The school did not provide specially designed instruction during the summer months, but Grace received counseling services, which were added subsequently added to her IEP. In August 2014, Grace decided not to return to the Center Point School in the fall semester.

**2014-2015 School Year at Wellsprings Friends School and First Due Process Hearing**

42.    In September 2014, Grace's parents, upon suggestion of the District and at District expense, enrolled Grace at the Wellsprings Friends School in Eugene, Oregon. An IEP meeting was held at Wellsprings on August 29, 2014, which included Wellsprings teachers and staff.  The IEP team added 36 hours of mental health counseling and 36 hours of services with an autism specialist, for a total of 359 hours of specially designed instruction and related services per IEP year.

43.    Wellsprings Friends School employed a part-time special education teacher responsible for all students on IEP and Section 504 plans at the school.

44.    Beginning in September 2014, Grace and her parents sought to have the school implement the specially designed instruction and related services required under her IEP.  When the school continued to fail to provide the services, Grace and her parents requested the District ensure her IEP be properly implemented.

45.     In September 2014, Grace and her parents filed a request for an administrative due process hearing seeking relief under the IDEA for the failure to provide Grace with FAPE during the 2012-2013 and 2013-2014 school years.

46.     At the October 2014 resolution meeting for the first due process complaint, Mary Beth informed district administrators Cheryl Linder and K.C. Clark that she was concerned that SDI and related services in Grace's IEP were not being implemented.  The District did not respond to or address Mary Beth's concerns at the meeting.  The following month, the District's attorney addressed the issue with Grace's attorney, refuting all the concerns regarding implementation and denying Grace was suffering harm.

47.     Despite numerous oral requests to obtain and or review Grace's educational records during the 2012-2013 and 2013-2014 school years, neither SEHS nor the District provided access to Grace's records.  In October 2014, Grace and her parents filed a written request under the Family Educational Rights and Protection Act ("FERPA"), seeking all of Grace's educational records.  The District did not respond to the request.

48.     On November 19, 2014, Grace and her parents filed a second complaint with the ODE, alleging that the District had failed to implement the specially designed instruction and related services for Grace since her enrollment at Wellsprings Friends School. On January 16, 2015, the ODE released its final order, finding the District did not implement the Grace's SDI in the areas of social and behavioral skills and organizational and study skills.  The ODE ordered reimbursement for private services incurred by Grace's parents, as well as training for District and private school personnel.

49.     An administrative hearing on the first due process complaint was held from January 27-30, 2015.  During the multi-day due process hearing, the District stipulated to failing its duties regarding Child Find, parental request for evaluations, and the provision of prior written notice on six occasions during the 2012-2013 and 2013-2014 school years, and agreed to the parents' request for compensatory education relief. The District also stipulated that Grace's absences were a manifestation of her disabilities necessitating the removal of failing grades and absences from her academic record. The parents also sought to exhaust all administrative remedies available under the ADA and Section 504 of the Rehabilitation Act.

50.     On March 20, 2015, Administrative Law Judge Allison Webster, incorporating the District's stipulations into her final order, found the District failed to provide Grace a FAPE under the IDEA, and required the District provide Grace with a minimum of 10.5 academic credits and 570 hours of compensatory education in specially designed instruction.  During the hearing, the District sought an offset of 156 hours that Grace attended the Center Point School during the summer of 2014, and the ALJ allowed the offset, holding that Grace had failed to prove attendance at the school was required under her IEP or placement.  ALJ Webster also held that remedies sought under the ADA and Section 504 were not within the court's jurisdiction.

51.     After the ODE final order regarding the District's failure to implement Grace's IEP, the District continued to refuse to implement the specially designed instruction in Grace's IEP.  On August 31, 2015, Grace and her parents filed a second request for an administrative due process hearing, alleging the District had failed in its

duty to implement Grace's IEP while at Wellsprings Friends School, denying her a FAPE

for the 2014-2015 school year.

### U.S. District Court Appeal of the First Due Process Hearing and
### The Second Due Process Hearing

52.     Grace and her parents appealed the offset of compensatory hours from the

first due process complaint on June 18, 2015 to the US District Court in Oregon. The

District objected to the appeal, but did not cross-appeal the ALJ's decision.

53.     On September 8, 2015, Grace and her parents filed a second request for

her educational records under FERPA.  Grace's attorney followed up with the District on

September 16, 2015.  On September 24, 2015, the District provided Grace with electronic

copies of some files, including her cumulative file and special education file, but the files

were incomplete and all other educational records were not provided, including access to

Grace's current files on the District's electronic student records system, Synergy.

54.     In December 2015, Grace and her parents discovered records in an

employee working file that although required to be included in her cumulative and

special education files, were missing from those files.  The records were relevant to both

the first and second due process complaints.  After supplementing the District Court

record with the newly discovered records, the Court overturned the ALJ's offset of

compensatory hours.  Grace also sought leave from the administrative hearing officer to

amend her second due process complaint and postpone the hearing pending further

discovery and attempts at resolution.  While the District did not hold a second resolution

meeting, the discovery provided many more documents from Grace's educational record,

including emails relevant to her allegations of retaliation in the first due process complaint.

55.     The second administrative due process hearing was held at District Main Offices on March 7-10.  On May 11, 2016, ALJ Denise McGorrin entered her final order, holding that the District had failed to provide Grace with a FAPE during the 2014-2015 school year by failing to implement any of the specially designed instruction set out in her IEP. The ALJ ordered the District to provide Grace with 175 hours of compensatory specially designed instruction and one hour per month of counseling until she graduates from high school.

## III.   FIRST CLAIM FOR RELIEF

**(Discrimination in Violation of Title II of the Americans with Disabilities Act "ADA" — 42 U.S.C. §§ 12132 et seq.)**

**(Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973 "Section 504" — 29 U.S.C. §§ 701 et seq.)**

**(Discrimination in Violation of 34 C.F.R.§104.33, C.F.R. §104.35, 34 C.F.R. §104.36)**

56.     Paragraphs 1 through 55 are incorporated herein by reference.

57.     The District violated Section 504 FAPE regulations that require adherence to certain procedures intended to facilitate provision of a FAPE, including 34 C.F.R.§104.33, testing and Evaluation, 34 C.F.R. §104.35, and notice to parents of educational plans for their children and access to records. 34 C.F.R. §104.36.

58.     Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132.

59.     Grace is a qualified individual with a disability within the meaning of State and Federal law.

60.     Grace was denied a reasonable accommodation — by the District's violating section 504 implementing regulations at 34 C.F.R.§104.33, 34 C.F.R. §104.35, and 34 C.F.R. §104.36 — that Grace needed in order to enjoy meaningful access to the benefits of public services;

61.     The District's actions denied Grace meaningful access to a public benefit — namely her right to a FAPE.

62.     The District receives financial assistance for special education programs, services, and activities from federal and state resources.

63.     As a condition of receiving those funds, the District is required to make their programs, services, and activities accessible to children with special needs and disabilities.

64.     The District denied Grace the right to full and equal access to its educational facilities because of her disabilities by failing to identify and evaluate Grace for the 2012-2013 and 2013-2014 school years, failing to assess and design an education program for Grace for the 2012-2013 and 2013-2014 school years, and failing to implement Grace's IEP for the 2014-2015 school year.

65.     The District was aware that harm to Grace's federally protected right of a FAPE was substantially likely by failing to identify and evaluate, failing to provide prior written notice, failing to allow Parents to records, and failing to implement her IEP.

Grace alerted the District of her need for the rights afforded in section 504 procedural safeguards, and that those procedural safeguards were required by section 504 and its implementing regulations.

66.    The District intentionally and with deliberate indifference, failed to provide Grace meaningful access to her education and reasonable accommodations by excluding her, solely by reason of her disability, from the participation in District's educational programs and denying Grace the benefits of District's program.

67.    The District's failure to identify and evaluate Grace resulted in a denial of Grace's access to a free and appropriate education for two (2) years during the 2012-2013 and 2013-2014 school years.  During that time, Grace suffered a loss of educational opportunity and was deprived of all educational benefit.

68.    The District's failure to assess Grace's specific areas of need resulted in District's failure to design an education program that provided appropriate accommodations and services to ensure that Grace had meaningful access to education as adequately as all other District students.

69.    The District failed to implement an educational program that allowed Grace meaningful access to education for a period of one year during the 2014-2015 school year.

70.    The District failed to provide Grace with educational aids and services designed to meet Grace's individual education needs as required under § 104.33(b)(1)(i) by failing to implement her IEP developed in accordance with the IDEA, 34 C.F.R. § 104.33(b)(2) for the 2014-2015 school year.

71.    The District's actions severely aggravated and compounded Grace's depression, anxiety, agoraphobia, distrust of District administration and staff, fear for her family, and personal humiliation and guilt. Grace's mental health was so compromised by the time the IEP was completed; she was initially placed into a therapeutic day program at the Center Point School in June 2014.

## IV.   SECOND CLAIM FOR RELIEF

### (RETALIATION UNDER "Section 504" AND "ADA")

72.    Paragraphs 1 through 71 are incorporated herein by reference.

73.    The Section 504 regulations incorporate by reference the procedural provisions contained in 34 C.F.R. § 100.7(e) of the federal regulations implementing Title VI of the Civil Rights Act of 1964. See 34 C.F.R. § 104.61. These provisions prohibit recipients or other persons (including districts) from intimidating, threatening, coercing or discriminating against any individual for the purpose of interfering with any right or privilege secured by Section 504, or because the individual has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Section 504. 34 C.F.R. § 100.7(e).

74.    In accordance with Section 504 regulations, FAPE requires regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of [34 C.F.R.] §§ 104.34, 104.35, and 104.36. 34 C.F.R. §104.33(b)(1).

75.    Grace engaged in protected activities when she sought assistance and an evaluation for FAPE from the District for the 2012-2013 and 2013-2014 school years, and requested the District implement her IEP for the 2014-2015 school year.

76.    Grace suffered adverse actions, because she was not evaluated by the District, which resulted in her inability to attend school for a period of two years and a total denial of FAPE, and her IEP was not implemented for the 2014-2015 school year, which resulted in a denial of FAPE.

77.    The District's decision to neither offer assistance nor evaluate Grace occurred within a reasonable amount of time after Grace sought assistance and an evaluation from the District. Similarly, the District's decision to not implement her IEP occurred within a reasonable amount of time after Grace sought its implementation.

78.    The district was aware of Grace's request for assistance and an evaluation, and request for implementation.

79.    There is evidence of a causal connection (nexus) between the Grace's request for an evaluation and the District's failure to evaluate Grace, and the District's failure to implement Grace's IEP for the 2014-2015 school year.

80.    The District and Lane ESD retaliated against Grace and Parents in response to the filing of the December 2013 Complaint with the ODE, as well as the Parents' ongoing advocacy for the civil rights of their disabled child protected under Section 504 of the Rehabilitation Act of 1973.

81.    Grace and her Parents suffered adverse actions when the District and Lane ESD filed criminal truancy proceedings against the Parents.

82.    The District and Lane ESD's decision to file truancy proceeding against Grace and her Parents occurred within a reasonable amount of time after Grace and her Parents filed a complaint with the Oregon Department of Education ("ODE").

83.    The District and Lane ESD were aware that the Parents filed a complaint with ODE at the time the truancy proceeding was filed.

84.    There is evidence of a causal connection (nexus) between the Parent's filing a complaint with ODE and the District and Lane ESD's filing a truancy proceeding.

85.    The District and Lane ESD's harassment and intimidation of Grace, and its retaliation against Parents, severely aggravated and compounded Grace's depression, anxiety, agoraphobia, distrust of District administration and staff, fear for her family, and personal humiliation and guilt. Grace's mental health was so compromised by the time the IEP was completed, she was initially placed into a therapeutic day program at the Center Point School in June 2014.

## VII.    THIRD CLAIM FOR RELIEF

### (Interference under "Section 504" AND "ADA")

86.    Paragraphs 1 through 85 are incorporated herein by reference.

87.    Grace engaged in protected activities when she sought access to her educational records, sought evaluation under Section 504 and the IDEA from the District, and requested the District implement her IEP.

88.    The District interfered with Grace's right to exercise and enjoyment of her rights under the ADA, Section 504 or the IDEA. The District's interference resulted in Grace's inability to attend school, access her educational records, receipt of notice as to why she was denied her rights, and implementation of her IEP.

89.    The District's actions in each of these instances occurred concurrently or within a reasonable amount of time after Grace sought assistance and an evaluation from the District. Similarly, the District's decision to not implement Grace's IEP occurred within a reasonable amount of time after Grace sought its implementation.

90.    The district was aware of Grace's request for assistance and an evaluation, request for access to her records, right to notice, and request for implementation of her IEP.

## VIII.   FOURTH CLAIM FOR RELIEF

### (Discrimination in Violation of ORS 659.850)

91.    Paragraphs 1 through 90 are incorporated herein by reference.

92.    The District's abdication of its to identify, locate, and evaluate Grace — despite direct requests from Parents and visible "red flags" which included frequent visits to the school nurse and counselors that should have triggered an evaluation —resulted in the unreasonable differential treatment, intended or unintended, or any act that is fair in form but discriminatory in operation, either of which is based on disability.

93.    The pursuit of a criminal truancy proceeding by the District against Grace, a student known to have a disability and undergoing a state ordered evaluation, and her parents resulted in an unreasonable differential treatment based on disability in violation of ORS 659.850.

94.    The failure of the District to implement an IEP developed in part by its own staff and teachers resulted in an unreasonable differential treatment based on disability in violation of ORS 659.850.

## IX.    RELIEF REQUESTED

 Plaintiffs request judgment as follows:

1. Assume jurisdiction over this case;

2. Enter judgment in favor of Plaintiffs and against the District and Lane ESD in an amount of special and general damages to be proven at trial;

3. Enter an award of the fees and costs incurred in prosecuting this case; and

4. Grant Plaintiffs such other and further relief as this Court deems just and appropriate.

Respectfully submitted this 20th day of May, 2016.

/s/ Melissa D. Wischerath
Melissa D. Wischerath
OSB # 130194
P.O. Box 12263
Eugene, OR 97440
(646) 765-0035 | (541) 600-4319
melissa@mdwlaw.net