**BEFORE THE STATE SUPERINTENDENT OF PUBLIC INSTRUCTION**

|  |  |
|---|---|
| In the matter of<br>Eugene SD 4J | )     FINDINGS OF FACT,<br>)   CONCLUSIONS, FINAL ORDER, AND<br>)     STIPULATED CORRETIVE ACTION<br>)              Case No. 14-054-042 |

## I. BACKGROUND

On November 19, 2014, the Oregon Department of Education (Department) received letter of complaint from a parent (Parent) of a student (Student) residing in the Eugene School District 4J (District). The Parent requested that the Department conduct a special education investigation under OAR 581-015-2030. The Department confirmed receipt of the complaint and forwarded it to the District on November 20, 2014.

On November 25, 2014, the Department sent a Request for Response (RFR) to the District identifying the specific allegations in the complaint that the Department would investigate. The District sent a timely narrative Response and related documents on December 8, 2014. The Parent submitted a narrative Reply and related records on December 15, 2014.

The Department's complaint investigator determined that on-site interviews were necessary. On December 17, 2014, the Department's investigator went to the Student's current school and interviewed all staff who work with the Student and/or are knowledgeable about the Student's IEP. On December 18, 2014, the Department's investigator interviewed all District employees with direct knowledge of the Student's IEP and circumstances related to this complaint. On December 19, 2014, the investigator interviewed key staff at a therapeutic school the Student attended during Summer 2014. On December 20, 2014, the investigator interviewed the Parent and the Student. The Department's complaint investigator reviewed and considered all information obtained through the interviews, from the District's and the Parent's narratives, documents, and from follow-up discussions with District's Special Education Administrators and the Parent.

Under federal and state law, the Department must investigate written complaints that allege IDEA violations that occurred within the twelve months prior to the Department's receipt of the complaint and issue a final order within 60 days of receiving the complaint. The Department may extend the timeline if the District and the Parent agree to an extension to participate in local resolution, mediation, or if requisite exceptional circumstances are present. This order is timely.

## II. ALLEGATIONS AND CONCLUSIONS

The Department has jurisdiction to resolve this complaint under 34 CFR 300.151-153 and OAR 581-015-2030. The Parent's allegations and the Department's conclusions are set out in the chart below. These conclusions are based on the Findings of Fact

(Section III) and the Discussion (Section IV). This complaint covers the one-year period from November 19, 2013 to the filing of this complaint on November 19, 2014.

|   | Allegations | Conclusions |
|---|---|---|
|   | The written complaint alleges that the District violated the IDEA in the following ways: |   |
| 1. | **IEP Implementation**: OAR 581-015-2220 and 34 CFR 300.323 |   |
|   | a. Not ensuring that staff responsible for IEP implementation had copies of Student's IEP at the beginning of the school year, and then distributing an IEP "in draft form" to staff a month into the school year. | **Not contested.** The District did not dispute the allegation. See Corrective Action. |
|   | b. Not providing services as the IEP prescribed, specifically: |   |
|   | i. behavioral/social skills | **Not contested.** The District acknowledges that the Student did not receive the specially-designed instruction in behavioral and social skills that the IEP prescribed at the private school. See Corrective Action. |
|   | ii. transition skills | **Not substantiated.** The Student had an opportunity to take a two-term sequence of transition classes beginning in 2nd term and continuing through 3rd term. The Student chose to take a different 2nd term class but will take a transition class 3rd term. |
|   | iii. study/organizational skills | **Not contested.** The District acknowledges that the Student did not receive the specially-designed instruction in study and organizational skills that the IEP prescribed. See Corrective Action. |
|   | iv. transportation | **Not contested.** The District did not dispute the allegation. See Corrective Action. |

| | | |
|---|---|---|
| | c. Issuing Student an assistive technology device (an iPad) as provided by the IEP, but not adequately training Student in the use of the device. | **Not substantiated**. The District provided the technology device and provided training to Student. The District has offered and continues to offer additional training as needed. |

## III. FINDINGS OF FACT

### Background

1. The Student is a high school senior residing within the District. The Student has reached the age of majority, but the Parents assist the Student in making decisions related to schooling and special education.

2. On April 18, 2014, the Student was found eligible for special education as a student with autism spectrum disorder and emotional disturbance.

3. The Student's IEP team met on May 5, 2014 to develop an IEP for Student and met again on May 12 to finalize the IEP, which was dated May 5, 2014 and had a May 13, 2014 start date for services.

4. The IEP team discussed the impact of the Student's disabilities on school attendance, peer interactions, work completion, and test performance. The Student had previously experienced substantial stress, repeated conflicts, and frequent absences in high school. To the extent relevant to this complaint, the IEP team decided that:

    a. The Student's history of Post-Traumatic Stress Disorder (PTSD), emotional regulation, social skills deficits, and peer conflict made a return to regular high school campus impossible at that time.

    b. The Student's behavior impeded [the Student's] learning and that of others. Consequently, the Student needed "[a] behavior support plan will be created based on a functional behavior assessment. A Safety Plan will be included along with the Behavior Plan."

    c. The Student needed assistive technology, specifically "Access to a computer or touch screen device to keep from losing [ ] work, help with organization, read textbooks, reduce anxiety by accessing supports."

5. To the extent that it relates to this complaint, the Student's May 5, 2014 IEP provided:

    a. <u>Specially designed instruction</u> (SDI): to be delivered by "special education teacher/provider" in a "self-contained/resource room" setting. This SDI included:

      i. Transition skills—3600 minutes/year
     ii. Study/organizational skills—2700 minutes/year
    iii. Behavior/social skills—5400 minutes/year

  b. <u>Related services</u>: assistive technology provided by an "Assistive Technology Specialist" in "General Ed Class/Resource Room."

  c. <u>Supplementary Aids/Services; Modifications; Accommodations</u>: "[Student will be] [a]llowed to use technology [ ] to see notes/presentation on a personal device or one provided by the district at all times."

6. The IEP team agreed that the Student would attend a small private school at District expense during the 2014-15 school year in order to meet Students Free Appropriate Public Education (FAPE) needs.

   The private school, which describes itself as an alternative learning community, strives to meet the educational needs of "teenagers [who] have difficulty being students in the high schools they have attended."

   The private school does not typically provide any of the special education services or instruction that are required on the Student's IEP and it has no self-contained classroom. The staff at the private school includes no Special Education Teachers. A contracted Special Education Teacher consults with the teaching staff at the school and sometimes observes students in class, but the Special Education Teacher does not deliver any special education services.

7. At the May 12, 2014 IEP meeting, the team decided that ESY was unnecessary because no regression/recoupment data was available for the Student. However, the District agreed to provide "20 hours of individual or small-group support in [...] goal areas during the summer of 2014" in order to help the Student with certain needed skills. The summer 2014 skills offered for student to work on were: social skills, behavior, and community interaction. The District hoped this summer instruction would help the Student transition to the new placement and a positive experience at the private school during fall of 2014.

8. On June 9, 2014, a team including the Parent, a Special Education Consultant, an Autism Consultant, a School Psychologist, and a Behavior Consultant met and developed a behavior support plan (BSP) designed to facilitate the Student's achievement of IEP behavior goals. It included an array of prevention, teaching, reinforcement, and consequence components, including in relevant part:

   a. <u>Prevention</u>: assistance and support for organizational needs with assignments.

   b. <u>Teaching</u>:
      i. Teach, model, and practice perspective taking strategies (scripted scenarios, role play, video examples, etc.)

    ii. Teach, model, and practice anxiety and stress management strategies. Coordinate with counselor/therapist for strategies, and wording.
    iii. Teach, model, and practice break routine (when, where, how to go to safe/break area). This will also include what to do when Student returns to class.
    iv. Teach, model, and practice how to disagree with peers and teacher in a socially appropriate manner that maintains relationships.
    v. Teach, model, and practice organizational skills regarding assignments, certain specific health related skills and managing Student's health (generally).

9. In fulfillment of its agreement to provide summer services, the District arranged for the Student to attend a therapeutic school for four hours per day for 39 days, from June 23 - August 15, 2014.

    a. In this setting, the Student's treatment goals, designed to facilitate the Student's transition back to school in the fall, included: "adaptive coping skills", "positive social skills", and "increased self-management skills."

    b. During this time, it was reported that the Student made "minimal" to "some" progress toward these goals, which staff stated was to be expected given the Student's relatively brief time at the school.

10. On August 29, the Student's IEP team met again to review the IEP, taking into account the Student's experiences and progress in the therapeutic school and to revise the IEP if needed.

    a. Participants included staff from the therapeutic school, the private high school the Student would be attending, District staff, and the Parent.

    b. At this meeting, therapeutic school staff stated that the Student had considerable mental health needs and recommended continued therapy. The Parent described problems in securing insurance coverage for counseling to the District. The District committed to paying for mental health services until the Student's insurance began paying for these services. The District also said it would pay for the social skills instruction.

    c. The team agreed to change the IEP related services relevant to this complaint as follows:
       i. Behavior/Social Skills
         (1) 1 hr per week of mental health therapy (36 weeks) with a community provider
         (2) 1 hr per week of social skills instruction (36 weeks) with a community provider
       ii. Transportation to and from school

11. The August 29, 2014 amended IEP reflected the addition of related services that the team had agreed to. The specially-designed instruction (SDI) on the amended IEP was unchanged except for correction of a clerical error not related to this complaint. The IEP continued to indicate that the Student's SDI would be provided by a "special ed teacher/provider" in a "self-contained/resource room" location.

12. Regular education staff at the private school reported that they were not aware of the specific content of the Student's IEP until mid-October.

13. The District did not provide transportation for the Student until October 13, 2014 and the Parent transported the Student to and from school during this time. The District acknowledges this lapse and has agreed to reimburse the Parents for their transportation costs that were incurred during this period of time.

14. The Student's private school offers transition classes during the second and third terms of the school year. The Student chose not to enroll in the second term transition class, preferring to take a different, unrelated class in its place. The Student reported that Student plans to enroll in the third term transition class.

15. On September 18, 2014 the District's Assistive Technology (AT) Specialist delivered to the Student an iPad and demonstrated the use of a variety of features and applications that the Student can use in a variety of ways for academic and stress reduction. The Assistive Technology Specialist is available for additional training in the use of the iPad but had not, as of December 18, 2014 received a request for further training from Student or the Parents. Private school teachers report that Student makes frequent and appropriate use of the iPad in classes.

16. From the beginning of the 2014-15 school year to the beginning of winter break, the Student received no SDI from a Special Education Teacher. The Special Education Teacher who contracts with the private school checked in with the Student on an *ad hoc* basis three times per week but did not engage in any formal instruction with the Student.

17. Staff at the private school report that Student displays steady growth in social skills. Private school staff are available to the Student to debrief and problem-solve peer conflicts and other social and emotional episodes. However, neither the private school nor the District provided specially designed instruction (SDI) in behavior or social skills to Student.

18. As of December 20, 2014 the Student had not received any mental health counseling, but the District reported it intends to provide all of the counseling that the IEP requires.

19. The perceptions of private school staff differ from those of the Parent and the Student about the Student's ability to study and the Student's organizational skills. Teachers of the private school report that the Student completes all assignments without apparent difficulty. They don't seem to think Student needs SDI in these

areas. It is undisputed, however, that neither the private school nor the District have provided SDI in study and organizational skills by a special education teacher or provider.

20. The Parent has contracted with independent service providers for tutoring in study-organizational skills and behavior-social skills.

## IV. DISCUSSION

### 1. IEP Implementation

This complaint involves allegations that the IEP for a student with a disability was incompletely implemented or not implemented at all. The IDEA requires that an IEP be in effect at the beginning of a school year, and a school district must provide special education and related services in accordance with the IEP.[1] A District must ensure that the IEP of a student with a disability is available to all staff members who are responsible for implementing the IEP, that each staff member is informed of his or her specific responsibilities for implementing the IEP, and that the specific accommodations, modifications and supports are provided for or on behalf of the student in accordance with the IEP.[2]

The Ninth Circuit Court of Appeals has held that "...a material failure to implement an IEP violates the IDEA."[3] The court stated that, "A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP."[4]

In this case, the District was out of compliance with the requirement that the Student's IEP be in effect at the beginning of the school year. Two of the four areas of specially-designed instruction (SDI) which were required by the IEP in effect at the beginning of the school year—behavioral-social skills and study-organizational skills—were not implemented at all from the beginning of the school year until the beginning of winter break. In addition, some related services were not provided at the beginning of the year including: the social skills instruction required by the IEP in effect at this time were not provided until at least the week of December 8, 2014; however, District proposed to provide all of the 2700 minutes of social skills instruction required for Student during the remainder of the school year. The record further shows that counseling which was required on the IEP in effect was also not provided to the Student for the fall of 2014; however, District notes in their reply they do plan on providing the 2700 minutes[5] of counseling required by the IEP during the remainder of the year. The transportation required for student was not provided until October 13, 2014 but the record shows the transportation request was first received on October 1, 2014. District has therefore

---

[1] OAR 581-015-2220(1) and 34 CFR 300.323(a)
[2] OAR 581-015-2220(3) and 34 CFR 300.323(d)
[3] *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811 (9th Cir. 2007)
[4] Id. at 822
[5] Note that the IEP dated 5/5/2014 shows only 2160 per year of Mental Health Counseling but 2700 hours of study skills.

offered to repay Parent for transporting student to and from school for the dates Student attended school from September 4, 2014 to October 12, 2014. Also, the Student received no instruction from a Special Education Teacher, as the IEP required while attending the private school. These were inarguably more than minor discrepancies between what the IEP prescribed and what the Student actually received. Additionally, emotional and social problems lie at the core of the Student's disabilities, and special education services focusing on those areas are critically important for the Student in this case. These were the types of services which were not implemented expediently for the Student. In addition, the Parent and Student both see organizational and study skills as a significant area of need. The Department therefore substantiates the allegation of a material non-implementation of the Student's IEP.

The District acknowledges that communication and service delivery broke down in this situation, and they have volunteered to rectify the problems as described in a Stipulated Corrective Action.

The District also did not contest that Parent's allegation that the staff at the private school did not receive copies of the Student's IEP in a timely manner. The District has volunteered to address this as a systemic problem as described in the Stipulated Corrective Action.

There were some IEP Implementation items that District was in compliance with, per the results of the investigation. First, for the complaint that the District had not provided assistive technology as the IEP required, there was no violation found during the investigation. The Department concludes that the District did provide a substantial portion of the required assistive technology to Student and further District stands ready to provide additional instruction to the Student in the use of the iPad as needed.

Second, the complaint allegation in respect to the argument that the District had not provided transition skills as the IEP requires is also not substantiated. While it is true that the Student has not yet received any specially designed instruction in transition planning, it was the Student's own decision to delay enrollment in a transition class. District has made this service available to Student, but Student has declined it. The Student reported that Student expects to enroll in a transition class for the 3rd term of the academic year. Given that the school year is not even halfway through at this time, and that plans are in place for provision of transition skills instruction going forward, the Department cannot conclude that the District has failed to implement the transition components of the Student's IEP. Therefore, the Department has not substantiated two of the Parent's allegations in the area of IEP Implementation.

Four areas of the IEP Implementation allegation were not contested and the Department accordingly orders the following Corrective Action.

# V. STIPULATED CORRECTIVE ACTION[6]

*In the Matter of Eugene SD 4J*
Case No. 14-054-042

|   | Action Required | Submissions[7] | Due Date |
|---|---|---|---|
| 1. | **IEP Distribution Requirements:**<br><br>1. District will provide training to all District staff responsible for timely finalizing and distributing IEP documents and informing service providers of their responsibilities. | 1. District will submit draft training materials for review to the Department via US Mail or email to raeann.ray@state.or.us and jan.burgoyne@state.or.us | **March 2, 2015** |
|   | 2. District will provide training to private alternative schools with which the District contracts. Training will cover issues of access to and implementation of IEPs, including specific instruction on who is responsible for each IEP component. Future contracts with private alternative schools will include language addressing timely distribution and implementation of IEPs. | 2. District will submit roster of attendees and copy of training materials for items one and two to the Department via US Mail or the two email addresses above. | **April 27, 2015** |
|   |   | 3. District will submit a list of impacted schools, and general draft contract language for use with private alternative schools, to address this provision to the Department via US Mail or to the two email addresses above. | **October 30, 2015** |

---

[6] The Department's order shall include any necessary corrective action as well as documentation to ensure that the corrective action has been completed. OAR 581-015-2030 (13). The Department expects and requires the timely completion of corrective action and will verify that the corrective action has been completed as specified in any final order. OAR 581-015-2030 (15). The Department may initiate remedies against a party who refuses to voluntarily comply with a plan of correction. OAR 581-015-2030 (17 & 18).

[7] Corrective action plans and related documentation as well as any questions about this corrective action should be directed to Rae Ann Ray, Oregon Department of Education, 255 Capitol St. NE, Salem, Oregon 97310-0203; telephone – (503) 947-5722; e-mail: raeann.ray@state.or.us; fax number (503) 378-5156.

| 2. | **Transportation:** <br><br> 1. District will re-train case managers regarding IDEA requirements for transportation as a related service. <br><br> 2. District will reimburse Parents for cost of transportation for school days 9/04/14 - 10/12/14 in the amount of $369.80. | 1. District will submit a copy of training materials to the Department for approval to the Department via US Mail or to the two email addresses above. <br><br> 2. District will submit evidence of completed training including a roster of attendees and agenda, to the Department via US Mail or to the two email addresses above. <br><br> 3. District will submit proof of payment made to Parents to the Department via US Mail or to the two email addresses above. | **March 2, 2015** <br><br><br><br> **March 31, 2015** <br><br><br><br><br><br> **April 27, 2015** |
| --- | --- | --- | --- |
| 3. | **Reimbursement for tutoring:** <br><br> Upon receipt of copies of Parent's contracts or proof of payment with or to the independent tutors in behavioral-social skills and study-organizational skills, District will reimburse Parent $800. | District will submit proof of payment to Parents to the Department via US Mail or to the two email addresses above. | **August 31, 2015** |
| 4. | **Mental health counseling:** <br><br> 1. District will provide mental health counseling as prescribed in the August 29, 2014 IEP. <br><br> 2. Regardless of any possible changes in related services in an amended IEP, District will pay for Student's mental health counseling for a three month period, in the amount of | 1. District will provide the Department with documentation of the 12 hours of mental health counseling services received for three months in accordance with the September 2014 IEP requirements. Date, time, and amount of counseling shall be documented and | **August 31, 2015** |

| | | | |
|---|---|---|---|
| | four hours per month (for a total of 12 hours), to compensate for the counseling the Student did not receive during September-December 2014. | submitted to the Department via US Mail or to the two email addresses above. | |

Dated: this 16th Day of January, 2015

_____
Sarah Drinkwater, Ph.D.
Assistant Superintendent
Office of Learning – Student Services


Mailing Date: January 16, 2015